IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF MISSOURI

CENTRAL DIVISION

| | |
|---|---|
| DESIGNWORKS HOMES, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>COLUMBIA HOUSE OF BROKERS REALTY, INC., et al.,<br><br>　　　　Defendants. | **Oral Argument Requested**<br><br>Case No. 2:18-CV-04090-BCW |

**PLAINTIFFS' SUPPLEMENTAL SUGGESTIONS IN OPPOSITION**

**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ON THE AFFIRMATIVE DEFENSE OF FAIR USE**[1]

---

[1] In these Supplemental Suggestions, docket entries for these cases are cited as "Dkt." followed by the docket number. Docket entries and other court materials (such as the cert. petition and *cert. amicus* briefs) are cited to the pagination like the CM/ECF docketing stamps starting with "1" on the first page, rather than the document's internal pagination. Unless otherwise indicated, all emphasis and brackets are supplied. Likewise, internal quotations are usually omitted for the ease of reading. All statutory citations are to Title 17 of United States Code, unless otherwise indicated.

1

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................... 4

INTRODUCTION & ARGUMENT..................................................................................... 5

    I.   THREE KEY FACTS MAKE THIS USE ESPECIALLY UNFAIR. ..................................................... 6

        A.  Defendants made no attempt to limit the harm to the architect's rights. ...................... 6

        B.  Defendants kept infringing for years when the houses were not listed for sale. .......... 6

        C.  Defendants do not show that the homeowners approved their uses. ............................ 6

    II.  THE BURDEN OF PROOF AND PROCEDURAL POSTURE SUPPORT PLAINTIFFS. ....................... 7

    III. DEFENDANTS' INFRINGEMENTS ARE NOT FAIR USE. ............................................................ 7

        A.  The four factors listed in the statute show that this use is unfair. ................................ 7

            i.    Factor 1: Commercial, non-transformative superseding use ............................ 7

            ii.   Factor 2: Unpublished, award-winning architectural design ........................... 7

            iii.  Factor 3: Wholesale copying ............................................................................ 8

            iv.  Factor 4: Significant market harm .................................................................... 8

        B.  Additional factors further demonstrate that this use is especially unfair..................... 8

            i.    Notification: No attempt to notify the rightsholder or seek authorization ........ 8

            ii.   Attribution: No credit to the rightsholder ......................................................... 9

            iii.  Privacy: Harms to homeowner privacy............................................................. 9

            iv.  Proportionality: No attempt to limit the use ..................................................... 9

            v.   Section 120: Exceeded separate codified defense. ........................................... 9

            vi.  Facilitates Infringement: Defendants wholesale and global distribution
                 facilitates infringing construction. ..................................................................... 9

        C.  When weighed, the factors show that Defendants' use was decidedly unfair. ............. 9

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE ......................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Brammer v. Violent Hues Prods., LLC,
 922 F.3d 255 (4th Cir. 2019). ........................................................................................ 8

Calvit v. Minneapolis Pub. Sch.,
 122 F.3d 1112 (8th Cir. 1997). ...................................................................................... 8

Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.,
 9 F.4th 803 (8th Cir. 2021). ........................................................................................... 6

Dr. Seuss Enters., L.P. v. ComicMix LLC,
 983 F.3d 443 (9th Cir. 2020). ........................................................................................ 8

Georgia v. Public.Resource.Org, Inc.,
 140 S. Ct. 1498 (2020). .................................................................................................. 6

McGucken v. Newsweek LLC,
 2022 U.S. Dist. LEXIS 50231 (S.D.N.Y. Mar. 21, 2022). ............................................ 7

McGucken v. Pub Ocean,
 2021 U.S. Dist. LEXIS 153361 (C.D. Cal. July 27, 2021). ........................................... 9

Midlevelu, Inc. v. ACI Info. Grp.,
 989 F.3d 1205 (11th Cir. 2021). ................................................................................ 8, 9

Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n,
 953 F.3d 638 (9th Cir. 2020). ........................................................................................ 6

Wood v. Oberserver Holdings, LLC,
 2021 U.S. Dist. LEXIS 127484 (S.D.N.Y. July 8, 2021). ............................................. 8

## INTRODUCTION & ARGUMENT

In 2019, the Parties filed cross-motions for summary judgment. Dkt. 72, 74. This Court granted summary judgment based on §120(a). Dkt. 106 at 12. Then, the Eighth Circuit reversed and remanded. Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc., 9 F.4th 803, 811-812 (8th Cir. 2021). On remand, this Court stayed the case pending resolution of Defendants' cert petition and authorized supplemental briefing. Dkt. 143. The Supreme Court has now denied cert. Dkt. 144. Thus, the residual issues in the cross-motions for summary judgment are ripe for decision, especially the issue of fair use.

Some fair use cases are easy. For example, the Eighth Circuit wisely suggested that fair use would obviously apply if a copyright holder was so outrageous as to sue "*homeowners*" or "*children*" for drawing floor plans of "their *own* homes." See id. at 810-811.[2] Emphatically, there are ***no*** homeowners—or children—being sued here. Cf. Dkt. 74 at 6. And, what the Court says on fair use as to the ***realtors*** being sued has little-to-no implications for fair uses by homeowners—because fair use is "***notoriously fact sensitive***" and a suit against homeowners would be different facts. See Georgia v. Public.Resource.Org, Inc., 140 S. Ct. 1498, 1513 (2020).

The facts ***here*** are that Defendants are seeking a massive and unfair incursion into the rights of others. Thus, this case is an easy case against fair use. Defendants (1) wholesale copied Plaintiffs' proprietary, award-winning architectural designs; (2) globally distributed them online without limitation for profit; (3) left them up for years *after* the homes were listed for sale; and (4) paid others for the copies but *neither* asked the architect for permission *nor* offered him a penny. That's not fair—and it's not fair use. This Court should deny summary judgment on the affirmative defense of fair use.

---

[2] Furthermore, if such outrageous-but-unlikely claims against homeowners or children ever arose, Congress has given the judiciary all the tools it needs to dispose of such claims and deter them. See, e.g., Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n, 953 F.3d 638 (9th Cir. 2020) (affirming on the alternative ground of fair use before awarding fees for "objectively *un*reasonable" music-copyright claims brought against a high school's "music education program").

5

Case 2:18-cv-04090-BCW   Document 145   Filed 07/12/22   Page 5 of 11

## I. THREE KEY FACTS MAKE THIS USE ESPECIALLY UNFAIR.

For fair use, courts don't paint with a broad brush. Instead, they hew closely to the facts because fair use is a "*context-sensitive inquiry*." E.g., McGucken v. Newsweek LLC, 2022 U.S. Dist. LEXIS 50231, *24 (S.D.N.Y. Mar. 21, 2022). Here, three facts are key.

### A. Defendants made no attempt to limit the harm to the architect's rights.

Defendants made no attempt to limit their online distribution of the floor plans. Instead, they adopted an approach of maximal, unfettered distribution: they "posted [the floor plans] on the Internet with the Multiple Listing Service[,]" Dkt. 72 at 1; exported to all of the available options which included the well known web sites: Realtor.com, Supra, Zillow and Homes.com[,]" Dkt. 76 at 6 ¶ 9; and offered "**free download" to *anyone***—including those who might want to copy plans, steal the architect's ideas, or dox a homeowner, Dkt. 76 at 7 ¶ 14. They made *no attempt to limit the harm to the architect's interest*—such as by through privately emailing the floor plans to interested buyers; protecting the plans behind a password; or requiring a (free) login onto their site to view the architect's plans. Instead, Defendants opted for the most unfair approach.

### B. Defendants kept infringing for years when the houses were not listed for sale.

Defendants listed the house for sale and posted the plans online in February 2017. Dkt. 75 at 6 ¶ 7; Dkt. 74 at 11 ¶ 18. Yet, even *after* the home was no longer listed for sale, Defendants left the plans up *for years*. This case is *not* about home sales, but about floor plans left up for years, for little apparent social benefit and in complete disregard for the architect's rights. See Cert. Pet. 15 ("8 years *after* the listing"). Leaving the floor plans up after no homeowner is trying to sell is especially unfair and unreasonable.

### C. Defendants do not show that the homeowners approved their uses.

Defendants say they had homeowner "consent[.]" Dkt. 72 at 1; Dkt. 74 at 9 ¶ 17; Dkt. 74-10 at 2 ¶ 4. Their evidence doesn't support that. Defendants had consent to "*measure*" the house. Dkt. 74-10 at 2 ¶ 4. Homeowner consent to *measure* a house is **not** consent to *globally distribute the floor plans* online for years, without limit, to anyone, even after the sale has ended.

## II. THE BURDEN OF PROOF AND PROCEDURAL POSTURE SUPPORT PLAINTIFFS.

Defendants are (1) the *movants* for *summary judgment* (2) on fair use, an *affirmative defense*. There are two procedural implications. **First**, "the Supreme Court […] ha[s] unequivocally placed the *burden of proof* on the proponent of the affirmative defense of fair use"—*i.e.*, *on Defendants*. E.g., Dr. Seuss Enters., L.P. v. ComicMix LLC, 983 F.3d 443, 459 (9th Cir. 2020). **Second**, as the non-movants here, Plaintiffs are entitled to "reasonable inference[s]" in their favor. E.g., Calvit v. Minneapolis Pub. Sch., 122 F.3d 1112, 1116 (8th Cir. 1997).

## III. DEFENDANTS' INFRINGEMENTS ARE NOT FAIR USE.

Both the enumerated factors, see Section III.A, *infra*, and unenumerated factors, see Section III.B, *infra*, show that Defendants' uses are *not* fair uses, see Section III.C, *infra*.

### A. The four factors listed in the statute show that this use is unfair.
#### i. *Factor 1: Commercial, non-transformative superseding use*

The purpose and character of this use is **commercial, non-transformative superseding use**. §107(1). Defendants concede their use was commercial. Dkt. 74 at 31 ("Commercial use"). They're right: marketing "to attract potential customers" *is* "commercial." Midlevelu, Inc. v. ACI Info. Grp., 989 F.3d 1205, 1222 (11th Cir. 2021). It's not transformative either. The design of the house was "*not* aesthetically transformed[.]" See Wood v. Oberserver Holdings, LLC, 2021 U.S. Dist. LEXIS 127484, *7 (S.D.N.Y. July 8, 2021). The online posting of the floor plans "communicates nothing new or different" in "their use in the real estate marketing materials: **they show the house**." See id. Merely posting them online or conveying "information" about the house isn't transformative. See Brammer v. Violent Hues Prods., LLC, 922 F.3d 255, 264 (4th Cir. 2019). Instead, it's superseding: their infringement "obviate[s] any need" for anyone to ever seek to license Plaintiffs' plans, so Defendants' uses superseded the use of the originals.

#### ii. *Factor 2: Unpublished, award-winning architectural design*

The award-winning, Dkt. 74-1 at 16 (p. 60:4-5), and "unique home design" at issue here, Dkt. 77-1 at 3 ¶ 3, is a creative work "afforded '**maximal protection**[,]'" see Midlevelu, 989 F.3d at 1222. Also, Plaintiffs' plans have never been published, see §101 (defining "Publication")—a

7

"key" factor "tending to *negate a defense of fair use*[,]" McGucken v. Pub Ocean, 2021 U.S. Dist. LEXIS 153361, *11 (C.D. Cal. July 27, 2021) (quoting Harper & Row, 471 U.S. at 554).

### iii. Factor 3: Wholesale copying

This is wholesale copying, which "militates against a finding of fair use." Midlevelu, 989 F.3d at 1223; compare Dkt. 74-3 at 1 (infringing floor plan) with Dkt. 74-6 (original). What Defendants posted gives "accurate or nearly accurate dimensions and space configuration" of Plaintiffs' designs. Dkt. 77-1 at 5 ¶ 16; Dkt. 74-2 at 4 (using "CAD"). None of this was necessary: homes readily sell without posting floor plans online. In fact, less than 1% of realtors use them. See Move Amicus 18, 25 (over "8,500,000 listings" on Realtor.com but only "65,000" use floor plans). Floor plans might be useful and valuable for selling a home but they're *not* necessary.

### iv. Factor 4: Significant market harm

Defendants say there is "no evidence" of market harm. Dkt. 74 at 31. They forget *they* bear the burden of proof. And, there is evidence of harm: that their use is a superseding use that limits licensing value by extensively disclosing the design of the home. McGucken v. Newsweek LLC, 2022 U.S. Dist. LEXIS 50231, *33 (S.D.N.Y. Mar. 21, 2022) ("competing substitute for the original" weighs against fair use); see also *cert. amici* briefs.

## B. Additional factors further demonstrate that this use is especially unfair.

Fair use "requires a **case-by-case** determination" especially because the four statutory factors "**nonexclusive**." Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 549 (1985). Here, *seven case-specific factors* weigh against fair use.

### i. Notification: No attempt to notify the rightsholder or seek authorization

Here, Defendants' use "**could have been obtained for a fee**" but they didn't ask. See Los Angeles News Serv. v. KCAL-TV Channel 9, 108 F.3d 1119, 1122 (9th Cir. 1997). "The bottom line is that [Defendants] created, **without seeking permission or a license**, non-transformative commercial" unauthorized use. ComicMix, 983 F.3d at 461.

8

### ii. *Attribution: No credit to the rightsholder*

Attribution "favors a finding of fair use[.]" Williamson v. Pearson Educ., Inc., 2001 U.S. Dist. LEXIS 17062, *17 (S.D.N.Y. Oct. 19, 2001). By contrast, "the **failure to acknowledge counts against**" a fair use. Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 23 (1st Cir. 2000). Here "there was **no attempt** by defendant [...] **to credit plaintiff**" weighing against fair use. Marcus v. Shirley Rowley an Diego Unified Sch. Dist., 695 F.2d 1171, 1176 (9th Cir. 1983).

### iii. *Privacy: Harms to homeowner privacy*

For fair use, "privacy interests may be an appropriate consideration"—especially where the work is "highly personal, private, and intimate[.]" New Era Publ'ns Int'l, ApS v. Henry Holt & Co., 695 F. Supp. 1493, 1505 (S.D.N.Y. Aug. 9, 1988). Leaving plans online for years when no sale is listed could create safety risks and privacy harms for homeowners, *e.g.*, doxing.

### iv. *Proportionality: No attempt to limit the use*

Fair use requires that copyrighted material be used "in a reasonable manner[.]" Monsarrat v. Newman, 28 F.4th 314, 321 (1st Cir. 2022). Defendants did not password protect the displays or limit online distribution in any manner. See Section I.A, *supra*.

### v. *Section 120: Exceeded separate codified defense.*

Where Congress wants to indicate that a failure to meet one of the codified defenses in §§108-122 has no impact on the fair use analysis, Congress does so expressly through a savings clause. E.g., §108(f)(4). Section 120 has no such savings clause and, as a result, Defendants' proximity to §120(a) but failure to meet it weighs against fair use.

### vi. *Facilitates Infringement: Defendants wholesale and global distribution facilitates infringing construction.*

"[U]nrestricted and widespread reproduction" of copyrighted works "create[s] incentives to pirate intellectual property." Monge v. Maya Magazines, Inc., 688 F.3d 1164, 1182 (9th Cir. 2012). Defendants unfettered global distribution facilitates infringement.

## C. When weighed, the factors show that Defendants' use was decidedly unfair.

The fair use factors must be "weighed together, **in light of the purposes of copyright**, namely **to promote progress in science and art**." Marano v. Metro. Museum of Art, 844 Fed.

9

Appx. 436, 438 (2d Cir. Apr. 2, 2021). Fair use must "uphold *copyright law's* ultimate purpose[.]" O'Neil v. Ratajkowski, 563 F. Supp. 3d 112, 128 (SDNY Sept. 28, 2021). Fair use exists to protect "the very **creativity** which [copyright] law is designed to foster." ComicMix LLC, 983 F.3d at 451.

Simply put, "[t]he fair use doctrine is **not a license for corporate theft**" when "the underlying work contains material of possible public importance." Sinclair v. Am. Media, Inc., 2018 U.S. Dist. LEXIS 154116, *12 (SDNY Sept. 7, 2018). Rather, copyright law "insist[s] that, just as artists must pay for their paint, canvas, [etc.]" if Defendants chose to use copyrighted expression, "they must pay for the material as well." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 52 (2d Cir. 2021).

Here, Defendants' unauthorized uses do **not** advance the field of architecture. Indeed, they do not advance *any* field of copyrighted works. Defendants' use is not creative. Defendants' use does not serve *any **copyright purpose*** whatsoever. It does not "promote progress in science and art." That's a non-starter for Defendant's purported fair use defense.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment

Date: July 13, 2022      Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska
Phone: (531) 210-2381
Andrew@DigitalJusticeFoundation.org

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this Court's CM/ECF system to other counsel of record.

DATED: July 13, 2022          Respectfully submitted,

/s/ Andrew Grimm
Andrew Grimm